A03A1259. HODGES v. ERICKSON et al.
(591 SE2d 360)

MIKELL, Judge.

This is the second appearance of this Dram Shop Act case before this Court. David Hodges filed the action against Paul and Brenda Erickson ("the Ericksons") to recover damages for injuries sustained in a collision with Brian Hammock shortly after Brian left a party at

---

the Ericksons' home. In *Erickson v. Hodges*[1] (*"Erickson I"*), we vacated the trial court's order denying the Ericksons' motion for summary judgment and remanded for the court to consider the deposition of Brian's brother, Scott Hammock. Upon remand, the trial court granted summary judgment to the Ericksons. Hodges appeals, and we affirm.

The facts recited in *Erickson I* will be recounted here only to the extent necessary to dispose of this appeal. We view those facts, as well as Scott's deposition, and all reasonable inferences that may be drawn from the evidence in the light most favorable to Hodges, as the nonmovant on summary judgment.[2] So viewed, the record shows that on January 23, 1999, the Ericksons held a party at their home with an unattended, open, self-service bar located in the basement. About 50 to 60 guests attended the party. In addition, the Ericksons' 23-year-old son, David, was allowed to invite friends who were known by his parents. David invited approximately eight adult friends, including Scott Hammock. Sometime during the party, and without the knowledge or consent of David or the Ericksons, Scott paged his 21-year-old brother, Brian, and invited him to the party. David did not see Brian drinking at the party and does not recall talking to him at the party. Neither David nor the Ericksons were aware of the time Brian left the party or his condition at that time. Approximately one-half mile from the Ericksons' home, Brian's car collided with Hodges' car. Brian Hammock pled guilty to driving under the influence as a result of this incident, and Hodges brought the instant action under the Dram Shop Act.[3]

The Act provides in relevant part as follows:

> A person . . . who knowingly sells, furnishes, or serves alcoholic beverages to a person who is in a state of noticeable intoxication, knowing that such person will soon be driving a motor vehicle, may become liable for injury or damage caused by or resulting from the intoxication of such minor or person when the sale, furnishing, or serving is the proximate cause of such injury or damage.[4]

In *Erickson I*, we held that, even if a question of fact existed as to whether the Ericksons furnished alcoholic beverages to Brian, there was no evidence that Brian was in a state of noticeable intoxication at the time he was furnished alcoholic beverages. Scott's deposition

---

[1] 257 Ga. App. 144 (570 SE2d 420) (2002).
[2] *Lau's Corp. v. Haskins*, 261 Ga. 491, 495 (4) (405 SE2d 474) (1991).
[3] *Erickson I*, supra at 144-145.
[4] OCGA § 51-1-40 (b).

does not alter this conclusion. Although Scott testified that Brian drank "Crown and Coke" at the party, Scott had no idea how many drinks Brian consumed or whether Brian became intoxicated.[5]

Finally, even if an issue of fact had been raised as to whether Brian was noticeably intoxicated at the time he was furnished alcoholic beverages, there is no evidence that anyone, much less the Ericksons, knew or should have known that Brian would soon be driving a motor vehicle. Scott testified that around 3:00 or 3:30 a.m., he told Brian that he was going to bed. Brian said he was leaving. Scott told Brian not to leave because he had been drinking, and Brian agreed to stay at the Ericksons. Brian put his keys back in his pocket, so Scott went to sleep. Apparently, Brian left as soon as Scott went to sleep, because Scott deposed that he was awakened a few minutes later and informed that Brian had been in an accident. Scott testified that he did not believe Brian would "go against" him and leave. Moreover, Scott testified that Paul Erickson was "a big stickler about making sure if you were drinking you're not driving," and we noted in *Erickson I* that arrangements were made for all of David's guests to spend the night at the Ericksons' home.

Hodges argues that the Ericksons had a duty to inquire as to whether Brian would be driving. But the cases cited by Hodges, *Riley v. H & H Operations*[6] and *Griffin Motel Co. v. Strickland*,[7] do not stand for this proposition. Rather, they hold that the plaintiff must show at least implied knowledge — that the provider of alcohol, in the exercise of reasonable care, should have known that the recipient would be driving.[8] In *Griffin Motel Co.*, there was evidence that an intoxicated patron who caused a collision made known his intention to leave and was observed by motel employees getting into his truck and driving away.[9] In this case, Brian was asked whether he would be driving and responded that he would not. This is direct evidence that Brian would *not* soon be driving, and contrary knowledge may not be imputed to the Ericksons.

We must apply the law as decreed by the General Assembly in OCGA § 51-1-40. Because there is no evidence that Brian was noticeably intoxicated at the party or that the Ericksons knew or should have known that he would soon be driving a motor vehicle, there is

---

[5] Compare *Pirkle v. Hawley*, 199 Ga. App. 371 (405 SE2d 71) (1991) (plaintiff's verdict affirmed where evidence showed that partygoer consumed ten to twelve 16-ounce cups of beer and that he became noticeably intoxicated).

[6] 263 Ga. 652 (436 SE2d 659) (1993).

[7] 223 Ga. App. 812 (479 SE2d 401) (1996).

[8] *Riley*, supra at 655 (2); *Griffin Motel Co.*, supra at 814-815 (2).

[9] *Griffin Motel Co.*, supra at 815.

no liability under the statute. The trial court did not err in granting summary judgment to the Ericksons.[10]

*Judgment affirmed. Johnson, P. J., and Eldridge, J., concur.*

DECIDED AUGUST 4, 2003 —
RECONSIDERATION DENIED DECEMBER 3, 2003 — 

*Curtis A. Thurston, Jr.*, for appellant.
*Swift, Currie, McGhee & Hiers, Maren R. Frost*, for appellees.

---

[10] See generally *Wright v. Pine Hills Country Club*, 261 Ga. App. 748 (583 SE2d 569) (2003) (no evidence of visible intoxication or that drinker would soon be driving a motor vehicle when she was served alcohol).