A04A1004. TYSON et al. v. OLD DOMINION FREIGHT LINE, INC. et al.

(608 SE2d 266)

ADAMS, Judge.

Thomas Eugene Tyson's car-carrying trailer struck the front of a tractor-trailer driven on behalf of Old Dominion Freight Line, Inc. by Kelvin Gates. Tyson and his wife brought a tort action against Old Dominion and Gates, but a jury returned a defense verdict. Tyson contends the trial court committed five errors.

Construed in favor of the verdict, the evidence shows that Tyson was driving a dual-rear-wheel pickup truck, pulling a 48-foot long, 6,000-pound, car-carrier trailer. In slow traffic he attempted to merge into a lane occupied by Gates, who was driving a tractor-trailer, when the left rear of Tyson's trailer scraped the right-front bumper of Gates's tractor. After some conversation between the two men, De-Kalb Police Officer Redder arrived. Both men told Redder that they were not hurt, neither man complained to the officer that the other had assaulted him, and the officer characterized the incident as a "minor fender bender."

Following the incident, the Old Dominion Accident Review Committee undertook an internal review of the incident to determine if it was "preventable" for the purpose of employee discipline. According to Old Dominion's internal review policy, responsibility for "accidents" is not based on who was legally at fault but rather on whether its driver could have prevented the collision:

Responsibility for accidents is based on whether or not the accident was preventable and not on who was primarily responsible or at fault. Responsibility to prevent accidents

goes beyond careful observance of traffic rules and regulations. Drivers must drive in a manner to prevent accidents, regardless of the other fellow's faulty driving or failure to observe traffic regulations.

This standard has been set for internal purposes only and shall not be considered to impose a greater burden of blame than that required by law in the event of an accident whose cause is disputed or where litigation arises.

Prior to trial, the court denied Tyson's motion to compel production of any reports or statements by the defendants that described the incident.[1] After the defense verdict, Tyson moved for a new trial. In response, and prior to the court's ruling on the motion for new trial, the defendants finally produced, under seal, what they contend is the internal review file, in connection with a motion to have the court undertake an in-camera review of the documents in an apparent attempt to show that any possible error in prohibiting discovery of the file was harmless. Although the court granted the motion for an in-camera review, it did so only for the "sole purpose [of] making [the] documents a part of the record in the event of an appeal," and the court did not take them into consideration for the purposes of the motion for new trial.

1. (a) Tyson contends that the trial court erred by denying his motion to compel discovery of the report of the Old Dominion Accident Review Committee. "The admission of evidence is within the sound discretion of the trial court, and this Court will not interfere with such exercise absent an abuse of discretion. [Cits.]" *McCorkle v. Dept. of Transp.*, 257 Ga. App. 397, 399 (1) (571 SE2d 160) (2002).

The defendants objected to Tyson's discovery requests on two grounds: that the information was inadmissible evidence of subsequent remedial measures and that it constituted privileged work-product information. In its response to Tyson's motion to compel, the defendants raised the additional argument that the documents were protected from discovery by 49 USC § 504 (f) because they were required by the Federal Motor Carrier Safety Administration (FMCSA).[2]

---

[1] The interrogatory in question states: "Please state in detail your version of how the incident occurred, identifying each and every prior statement or report in which Defendants have set forth their version of this incident."

[2] 49 USC § 504 (f) provides, "No part of a report of an accident occurring in operations of a motor carrier, motor carrier of migrant workers, or motor private carrier and required by the Secretary, and no part of a report of an investigation of the accident made by the Secretary, may be admitted into evidence or used in a civil action for damages related to a matter mentioned in the report or investigation."

The trial court held that according to federal law, the report was not discoverable.

The trial court incorrectly applied 49 USC § 504 (f). There is simply no evidence in the record that the documents in question were prepared to satisfy the requirements of the FMCSA. The defendants argue that because FMCSA regulations require motor carriers to determine the "preventable accident rate per million miles," 49 CFR § 385.7, it necessarily follows that the internal review to determine whether the accident in question was preventable "fits squarely within 49 U.S.C. § 504 (f)." But that is not necessarily so, and Old Dominion failed to submit any evidence to show that its internal review was conducted in order to comply with FMCSA requirements. "An unsupported claim of privilege does not meet the proponent's burden of showing the privilege applies." *Gen. Motors Corp. v. Conkle*, 226 Ga. App. 34, 47 (2) (486 SE2d 180) (1997). Accordingly, the trial court abused its discretion in so finding. Even when the defendants submitted documents for in-camera review in response to Tyson's motion for new trial, they did not include an affidavit or other evidence to show that the documents were generated in connection with FMCSA requirements. The defendants are now precluded from making this assertion. See id. Because the defendants also failed to offer any evidence that the documents were protected attorney/client work product, they are precluded from asserting that argument as well.

(b) The defendants argue that, nevertheless, the internal review process and all documents prepared in connection with that process, constitute inadmissible evidence of "subsequent remedial measures," and that therefore the report is not discoverable.

It is true that evidence of subsequent remedial measures generally is inadmissible in negligence actions for policy reasons because it could be considered evidence of negligence:

> the admission of such evidence basically conflicts with the public policy of encouraging safety through remedial action, for the instituting of remedial safety measures might be discouraged if such conduct is admissible as evidence of negligence.

(Citation omitted.) *Royals v. Ga. Peace Officer Standards &c.*, 222 Ga. App. 400, 401 (1) (474 SE2d 220) (1996). Employee discipline following the event may be considered a subsequent remedial measure. See generally Milich, Georgia Rules of Evidence, § 18.6 (2nd ed. 2002). To the extent the report contains that information it would be inadmissible.

But evidence that is submitted for some purpose other than showing negligence, "may be admissible in a particular case . . . and the jury instructed as to the purpose for which it is received. [Cit.]" (Punctuation omitted.) *Dept. of Transp. v. Cannady*, 230 Ga. App. 585, 587 (1) (497 SE2d 72) (1998), aff'd, 270 Ga. 427 (511 SE2d 173) (1999). See also *Thomas v. Dept. of Transp.*, 232 Ga. App. 639, 641 (1) (502 SE2d 748) (1998). For example, such evidence may be admitted to prove some fact of the case on trial other than belated awareness of negligence. See, e.g., *CSX Transp. v. Monhollen*, 229 Ga. App. 516, 519-520 (2) (494 SE2d 202) (1997). And even inadmissible documents are discoverable so long as they appear reasonably calculated to lead to the discovery of admissible evidence. *Sechler Family Partnership v. Prime Group*, 255 Ga. App. 854, 859 (5) (567 SE2d 24) (2002); OCGA § 9-11-26 (b) (1). Tyson contends the evidence might have been used to prove a fact such as Tyson signaled before merging into Gates's lane, Gates flashed his lights to give Tyson permission to merge, or Gates was guilty of aggressive driving under OCGA § 40-6-397. Documents responsive to Tyson's discovery requests could easily have led to the discovery of admissible evidence of this nature.

The trial court therefore abused its discretion by precluding all discovery in connection with Old Dominion's internal review of the incident because Old Dominion failed to support its claim that the documents were inadmissible under federal law and because granting the motion to compel may have led to the discovery of admissible evidence. Moreover, in addressing this enumeration of error, this Court cannot consider the documents attached to Old Dominion's motion for an in-camera review because they were not considered by the trial court, and we are not able to tell whether these documents constitute all documents responsive to the above-mentioned discovery requests.

Therefore, denial of Tyson's motion for new trial must be vacated and the case remanded for the purposes of granting Tyson's motion to compel a full response to interrogatory no. 10 and the associated request for production of documents. The trial court will then conduct a new hearing on the motion for new trial in order to determine whether any of the discovered information would have been admissible both as an exception to the subsequent remedial measures doctrine and in accordance with the rules of evidence. Depending on these findings, the trial court will then consider Tyson's motion for new trial.

2. Tyson contends that the court erred by granting the defendants' motion in limine no. 21, which prohibited use at trial of any evidence "concerning Old Dominion's Accident Review Committee," and more specifically, the committee's conclusion that the collision was preventable. With regard to the finding that the collision was

preventable, the evidence shows that Old Dominion's definition of preventable is different from the standard of liability. Accordingly, the trial court's ruling with regard to the finding itself was not an abuse of discretion. See generally *Hosp. Corp. of Lanier v. Doster*, 254 Ga. App. 169, 171 (3) (561 SE2d 846) (2002) (court has discretion to determine whether prejudicial effect outweighs probative value).

We are unable to rule on the trial court's decision with regard to all other documents responsive to the above-mentioned discovery requests because those documents are not properly in the record as a result of the trial court's decision on the motion to compel. These questions of admissibility are to be addressed on remand in accordance with Division 1.

3. Tyson contends the trial court erred by allowing the defendants to impeach him with a medical record that indicated he told a doctor he was not in pain. Tyson testified that he did not tell Dr. Paula Gregory that he was "feeling fine" after the accident, and he said that any such statement was a "lie." In response, the defense attempted to introduce a certified copy of a medical record prepared by Dr. Gregory in which there was recorded a statement allegedly made by Tyson indicating that he was not in pain. In response to Tyson's objection, the defense argued that Tyson's statement was an exception to the hearsay rule because it was made for the purpose of diagnosis and treatment, see OCGA § 24-3-4; that it had been authenticated because it was certified by the medical records custodian in Dr. Gregory's office, see OCGA § 24-7-8; and that it was being offered for impeachment. The statement was also an admission against interest. We find no error for these same reasons.

4. Tyson next contends the trial court misled the jury on the standard of proof required for his claims by giving a charge on the definition of clear and convincing evidence in an illogical order.

On the second page of 22 pages of jury-charge transcript, the court charged that a preponderance of the evidence was required on plaintiffs' claims:

> I charge you now that the plaintiffs have the burden of proof, which means that the plaintiffs must prove whatever it takes to make out their case. Except for an admission by the defendants, plaintiffs must prove their case by what is known as a preponderance of the evidence; that is, evidence upon the issues involved which, while not enough to wholly free the mind from reasonable doubt, is yet sufficient to incline a reasonable and impartial mind to one side of the issue, rather than to another.

The court immediately thereafter explained that a preponderance was also required for causation:

> I charge you that the standard [of] proof required to establish that an injury resulted from a plaintiff's negligence [sic] is a preponderance of the evidence.

Three pages later, following several general charges on credibility, experts, witnesses, and conflicts in the evidence, the court gave a series of charges on types of evidence. It charged the jury on the definition of direct evidence, circumstantial evidence, and, then, clear and convincing evidence as follows:

> I charge you that clear and convincing evidence is defined as evidence that will cause the jury to firmly believe each essential element of a claim to a high degree of probability. Proof by clear and convincing evidence requires a level of proof greater than a preponderance of the evidence, but less than beyond a reasonable doubt.

At this point, the court had not mentioned punitive damages.

Three pages later the court again addressed the standard of proof on the main claims:

> If you believe from a preponderance of the evidence that the plaintiffs are entitled to recover, you should award to plaintiffs such sums as you believe are reasonable and just in this case.

Finally, five pages later, the court charged on punitive damages, including that the standard required clear and convincing evidence:

> In order for punitive damages to be awarded, the plaintiff must prove by clear and convincing evidence that the defendants' actions showed willful misconduct, malice, fraud, wantonness, oppression, or the entire want of care which would raise the presumption of conscious indifference to consequences.

Three pages later, the court readdressed the burden of proof on the plaintiffs' main claims:

> I now charge you that if you believe from a preponderance of the evidence that the plaintiffs are entitled to recover, you would find for the plaintiff.

Although the court inadvisedly gave a definition of clear and convincing evidence separate from the charge on punitive damages, the court clearly instructed the jury several times that the standard of proof for the plaintiffs' main claims was a preponderance of the evidence. The correctness of a single charge must be determined based on the charge as a whole. *Shirley v. State,* 245 Ga. 616, 619 (3) (266 SE2d 218) (1980). We find no error.

5. Finally, Tyson contends the trial court should have given his request to charge on aggressive driving. See OCGA § 40-6-397. But Tyson points to no evidence to support this charge. He contends that Gates's alleged confrontational behavior after the collision could indicate that Gates hit Tyson because of road rage. But there is no evidence to support this speculation. A charge must be adjusted to the facts of the case. *Nails v. Rebhan,* 246 Ga. App. 19, 21 (2) (538 SE2d 843) (2000).

*Judgment reversed and case remanded with direction. Ruffin, P. J., and Eldridge, J., concur.*

DECIDED NOVEMBER 24, 2004 —
RECONSIDERATION DENIED DECEMBER 14, 2004 —

*William L. Skinner,* for appellants.
*Dennis, Corry, Porter & Smith, Ronald R. Coleman, Jr.,* for appellees.