APRIL TUCKER

VERSUS

REGINALD THORNTON, THORNTON'S CAB
SERVICE, GEICO GENERAL INSURANCE
COMPANY, AND ATLAS INSURANCE
COMPANY

NO. 22-CA-431

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 779-380, DIVISION "L"
HONORABLE DONALD A. ROWAN, JR., JUDGE PRESIDING

April 26, 2023

**JUDE G. GRAVOIS**
**JUDGE**

Panel composed of Judges Jude G. Gravois,
Stephen J. Windhorst, and Cornelius E. Regan, Pro Tempore

**AFFIRMED**
    **JGG**
    **SJW**
    **CER**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Jalisa Walker
Deputy, Clerk of Court

COUNSEL FOR PLAINTIFF/APPELLANT,
APRIL TUCKER
    Daryl A. Gray
    Eric A. Wright
    Louis H. Thomas, III

COUNSEL FOR DEFENDANT/APPELLEE,
GEICO GENERAL INSURANCE COMPANY
    J. Christopher Dippel, Jr.
    Stephen D. Cronin

**GRAVOIS, J.**

Plaintiff/appellant, April Tucker, appeals the trial court's May 5, 2022 judgment which granted a motion for a directed verdict filed by defendant/appellee, GEICO General Insurance Company, against Ms. Tucker and dismissed the matter with prejudice. For the reasons that follow, we affirm.

## FACTS AND PROCEDURAL HISTORY

On January 10, 2017, Ms. Tucker was a passenger in a taxicab owned by Thornton's Cab Service, LLC and driven by Reginald Thornton when the taxicab was struck by a vehicle driven by Ashlinn Grubb. On January 8, 2018, Ms. Tucker filed a petition for damages against Mr. Thornton, Thornton's Cab Service, LLC, its insurer, Atlas Insurance Group, LLC, and Ms. Tucker's uninsured/underinsured insurance carrier, GEICO. Ms. Tucker subsequently amended her petition for damages to name as a defendant, American Service Insurance Company, as Thornton's Cab Service's insurer. Ms. Grubb was never named as a defendant.[1]

On June 8, 2020, Ms. Tucker filed a motion to dismiss with prejudice all claims against Mr. Thornton, Thornton's Cab Service, American Service Insurance Company, and Atlas Insurance Group. An order dismissing these parties with prejudice was signed on June 9, 2020. Thereafter, GEICO remained as the only defendant in the matter.

A jury trial on the merits of the matter began on May 4, 2022. After Ms. Tucker rested her case, GEICO moved for a directed verdict. GEICO argued that Ms. Tucker was insured under a Georgia Family Automobile Insurance Policy and that policy falls under Georgia's Uninsured Motorist Act, OCGA § 33-7-11. Based on the statute, GEICO argued that Ms. Tucker was obligated to sue and obtain a

---

[1] Ms. Tucker settled with State Farm Mutual Insurance Company, which provided coverage to Ms. Grubb for the subject accident, for the policy limits, and a release was executed. It was stipulated at trial that the State Farm policy had been exhausted.

judgment against the underinsured motorist (Ms. Grubb) as a condition precedent to her right to recover underinsured motorist benefits from GEICO. Because Ms. Tucker never filed suit against Ms. Grubb and voluntarily dismissed the other defendants, GEICO argued that she cannot recover against GEICO. The trial court took the matter under advisement. On the following morning, the parties reconvened, and following arguments by both parties, the trial court granted the motion for a directed verdict.

A written judgment was signed on May 5, 2022, granting the motion for a directed verdict filed by GEICO against Ms. Tucker and dismissing the matter with prejudice at Ms. Tucker's cost.[2] In its reasons for judgment, the trial court first found that Georgia law applied to this dispute. It then found that pursuant to Georgia law, because the tortfeasor (Ms. Grubb) was never named in this suit, there exists no vehicle to assign any fault to the tortfeasor. Without this determination, there exists no legal liability under Georgia law on the part of the underinsured motorist insurance carrier (GEICO). Thus, the trial court found that because Ms. Tucker's case presents no opportunity for a finding of legal liability on the part of GEICO, as a matter of law, the motion for a directed verdict must be granted. This appeal followed.

## LAW AND ANALYSIS

A motion for a directed verdict is a procedural device available in jury trials for purposes of judicial economy. *Williams v. State Farm Mut. Auto. Ins. Co.*, 20-

---

[2] The May 5, 2022 written judgment also contains written reasons for judgment. Louisiana Code of Civil Procedure article 1918(B) states that when written reasons for judgment are assigned, they shall be set out in an opinion separate from the judgment. However, the Louisiana Supreme Court has held that the language contained in the second sentence of La. C.C.P. art. 1918 is precatory, and as such does not render an otherwise complete and valid judgment invalid merely because it contains surplus language. *Hinchman v. International Brotherhood of Electrical Workers, Local Union # 130*, 292 So.2d 717 (La. 1974); *Martin v. JKD Investments, LLC*, 42,196 (La. App. 2 Cir. 6/20/07), 961 So.2d 575, 578. In the present case, the final judgment contains proper decretal language as required by La. C.C.P. art. 1918 and is a valid judgment subject to this Court's jurisdiction. *See Elledge v. Becnel*, 22-0491 (La. App. 1 Cir. 11/4/22), 354 So.3d 688, 691 n.1.

248 (La. App. 5 Cir. 2/17/21), 314 So.3d 1010, 1021, *writ denied*, 21-0402 (La. 5/11/21), 315 So.3d 871. The motion should be granted when, after considering all of the evidence in the light and with all reasonable inferences most favorable to the movant's opponent, it is clear that the facts and inferences point so overwhelmingly in favor of granting the verdict, that reasonable jurors could not arrive at a contrary result. *Greene v. Lovisa*, 16-660 (La. App. 5 Cir. 5/17/17), 221 So.3d 270, 276, *writ denied*, 17-1017 (La. 10/9/17), 227 So.3d 837. However, the motion should be denied and the case submitted to the jury, if evidence is produced in opposition to the motion that has such quality and weight that reasonable and fair-minded persons, exercising impartial judgment, might reach different conclusions. *Id.*

The trial court has great discretion in determining whether a directed verdict should be granted. *Baudy v. Travelers Indem. Co. of Connecticut*, 13-832 (La. App. 5 Cir. 4/9/14), 140 So.3d 125, 131. The standard of review for the appellate court is whether, viewing the evidence submitted, reasonable persons could not reach a contrary result. *Id.* at 146. Moreover, the propriety of a directed verdict must be evaluated in light of the substantive law related to the claims. *Id.*

<u>**ASSIGNMENT OF ERROR NUMBER ONE**</u>

In her first assignment of error, Ms. Tucker argues that the trial court erred in applying Georgia law and not Louisiana law in this case. Ms. Tucker argues that Louisiana policies would be most seriously impaired if its laws were not applied to the uninsured motorist provisions at issue in this case and to Ms. Tucker's uninsured motorist claims. She contends that:1) although she has a Georgia policy, she has changed residences multiple times and will likely continue to do so; 2) her job is primarily remote and requires her to travel to Louisiana and other states; and 3) she has no significant or permanent ties to Georgia.

The GEICO policy in the present case contains a "Choice of Law" provision in Section V, entitled "General Conditions," that states, "[t]he policy and any amendment(s) and endorsement(s) are to be interpreted pursuant to the laws of Georgia."

Under Louisiana law, it is well established that where the parties stipulate to the state law governing the contract, Louisiana conflict of laws principles require that the stipulation be given effect, unless there is statutory or jurisprudential law to the contrary or strong public policy considerations justify not honoring the contract as written. *See* La. C.C. art. 3540;[3] *Clark v. Legion Ins. Co.*, 06-0320 (La. App. 4 Cir. 11/29/06), 947 So.2d 110, 114, *writ denied*, 07-0368 (La. 3/30/07), 953 So.2d 69; *Continental Eagle Corporation v. Tanner & Co.*, 95-295 (La. App. 3 Cir. 10/4/95), 663 So.2d 204, 206. A choice-of-law provision in a contract is presumed valid until proven otherwise. The party seeking to prove the invalidity of the contractual provision bears the burden of proof. *Clark*, *supra*.

In Louisiana, there is a strong public interest in providing full recovery for automobile accident victims who suffer damages caused by a tortfeasor who is not covered by adequate liability insurance. *Garces-Rodriguez v. GEICO Indem. Co.*, 16-196 (La. App. 5 Cir. 12/21/16), 209 So.3d 389, 393; *Henson v. Safeco Ins. Co.*, 585 So.2d 534, 537 (La. 1991). However, Louisiana also recognizes that other states have an interest in the regulation of the insurance industry conducting business within their borders and in the contractual obligations that are inherent parts thereof. *Champagne v. Ward*, 03-3211 (La. 1/19/05), 893 So.2d 773. In *Champagne*, the Supreme Court indicated that the integrity of the contract is a

---

[3] Louisiana Civil Code article 3540 provides:

All other issues of conventional obligations are governed by the law expressly chosen or clearly relied upon by the parties, except to the extent that law contravenes the public policy of the state whose law would otherwise be applicable under Article 3537.

substantial and real interest. The Court further stated "[t]he fact that Congress has allowed fifty states to have their own uniform system of regulations governing insurance strongly suggests this is a legitimate public purpose." *Champagne*, 893 So.2d at 788.

Upon review, we find Ms. Tucker failed to prove that the choice of law provision contained in the GEICO policy is invalid and that any strong public policy considerations justify not honoring the policy provision as written. It is undisputed that this Georgia policy was issued to Ms. Tucker who, at the time, was a resident of Georgia. Ms. Tucker testified at trial that she has never lived in Louisiana, and at the time of the accident, she was only here for a work meeting. We find that the choice of law provision contained in the GEICO policy prevails in the present case, and as such, we find no error in the trial court's determination that Georgia law should be applied to this dispute.

## ASSIGNMENTS OF ERROR NUMBERS TWO AND FOUR

In her second assignment of error, Ms. Tucker argues that even if Georgia law applies, GEICO is estopped from invoking the condition precedent imposed by OCGA § 33-7-11 since GEICO led Ms. Tucker to believe that she would receive payment. She contends that she believed a payment would be coming based on a $10,000 medical payments check she received from GEICO and because GEICO stipulated to the limited release language of Ms. Tucker's settlements with the other defendants. She alleges that the case has been going on for five years, and GEICO's actions led her to believe that it would be forthcoming on her claims without the need to engage in legal action. This caused Ms. Tucker to forfeit her ability to amend and file suit against Ms. Grubb.

Similarly, in her fourth assignment of error, Ms. Tucker argues that GEICO's use of the motion for a directed verdict in this case was prejudicial. She contends that she was deceived by GEICO since the UM provision issue GEICO

now argues should have been negotiated and/or decided at an earlier stage of litigation.

Under Georgia law, it is well settled that an injured party must first establish that the driver of the uninsured vehicle is legally liable to him or her for the accident before recovery is allowed under uninsured motorist coverage. *Morton v. Horace Mann Ins. Co.*, 282 Ga.App. 734, 738, 639 S.E.2d 352 (2006); *Kent v. State Farm Mut. Auto. Ins. Co.*, 233 Ga.App. 564, 565, 504 S.E.2d 710 (1998). Thus OCGA § 33-7-11 has been interpreted to require that a claimant must obtain a judgment against the uninsured motorist as a condition precedent to recovery against an automobile liability carrier under the provisions of uninsured motorist coverage. *Id.*

This condition precedent imposed by OCGA § 33-7-11 may be waived in certain circumstances where the insurer has led the insured to believe that the insured will be paid without suit by its actions in negotiating for settlement or direct promises to pay. *Harden v. State Farm Mut. Auto. Ins. Co.*, 339 Fed. Appx. 897, 902 (11th Cir. 2009); *Chandler v. Liberty Mut. Fire Ins. Co.*, 333 Ga.App. 595, 598, 773 S.E.2d 876 (2015); *Jones v. Cotton States Mut. Ins. Co.*, 185 Ga.App. 66, 363 S.E.2d 303 (1987). In *United States Fid. & Guar. Co. v. Lockhart*, 124 Ga.App. 810, 811, 186 S.E.2d 362 (1971), the court found that the condition precedent to be waived when the defendant "consistently and repeatedly assured plaintiff that his claim under the uninsured motorist coverage for personal injuries ... would be satisfactorily concluded, and that it would not be necessary for plaintiff to initiate legal action of any kind in order to receive payment of his claim ... ."

Upon review, we find that Ms. Tucker failed to present any evidence that GEICO waived the condition precedent imposed by OCGA § 33-7-11. Though litigation has been ongoing, there was no evidence in the record that GEICO

assured Ms. Tucker that it would pay without requiring her to engage in any legal action against Ms. Grubb. GEICO did pay Ms. Tucker $10,000 under the medical payments coverage of her policy; however, we do not find that this payment under a different provision of her policy was a direct promise of payment. A review of the record reveals that prior to the trial on the merits, GEICO argued that Georgia law applied in this case, and so Ms. Tucker was presumably aware of GEICO's reliance on Georgia law. Ms. Tucker failed to provide any evidence that her failure to name Ms. Grubb in her lawsuit and GEICO's use of a motion for a directed verdict was the result of any deception by GEICO. As such, we find no error in GEICO's use of the motion for a directed verdict, and the trial court's great discretion in granting the motion for a directed verdict. Accordingly, we find no merit to these assignments of error.

**ASSIGNMENT OF ERROR NUMBER THREE**

Finally, in her third assignment of error, Ms. Tucker argues that OCGA § 33-7-11 has been interpreted under Georgia jurisprudence to require a plaintiff to first sue and recover a judgment against an *uninsured* motorist—not an *underinsured* motorist like Ms. Grubb in the present case. She contends that since OCGA § 33-7-11 only applies to *uninsured* motorists, the trial court erred in granting the directed verdict.

Ms. Tucker provides no legal support for her argument in this assignment of error. Contrary to her argument, in *Merch. v. Canal Ins. Co.*, 238 Ga.App. 727, 728, 520 S.E.2d 57 (1999), the court found that a 1980 amendment to OCGA § 33-7-11 expanded the definition of *uninsured* motor vehicles to include *underinsured* motor vehicles. *Id.*, citing *Hall v. Regal Ins. Co.*, 202 Ga.App. 511, 512, 414 S.E.2d 669 (1991). Since that time, the courts have applied the statute to *underinsured* motor vehicles. *See Kent*, *supra*; *Donovan v. State Farm Mut. Auto. Ins. Co.*, 329 Ga.App. 609, 765 S.E.2d 755 (2014). In *State Farm Mut. Auto. Ins.*

*Co. v. Adams*, 288 Ga. 315, 316, 702 S.E.2d 898 (2010), the Georgia Supreme

Court considered the language of OCGA § 33-7-11(b)(1)(D)(ii) to determine when

a motor vehicle is underinsured "and thereby an uninsured motor vehicle." *Id*.

Further, the jurisprudence has noted that whether a motorist is uninsured or

underinsured, the statutory characterization is that of "uninsured." *See* OCGA §

33-7-11(b)(1)(D)(ii)[4]; *FCCI Ins. Co. v. McLendon Enterprises*, *Inc*., 297 Ga. 136,

---

[4] OCGA § 33-7-11(b)(1)(D)(ii), in its current version, provides, in pertinent part:

D) "Uninsured motor vehicle" means a motor vehicle, other than a motor vehicle owned by or furnished for the regular use of the named insured, the spouse of the named insured, and, while residents of the same household, the relative of either, as to which there is:

   (i)  No bodily injury liability insurance and property damage liability insurance;

   (ii) Bodily injury liability insurance and property damage liability insurance and the insured has uninsured motorist coverage provided under the insured's motor vehicle insurance policy; the motor vehicle shall be considered uninsured, and the amount of available coverages shall be as follows:

      (I)  Such motor vehicle shall be considered uninsured to the full extent of the limits of the uninsured motorist coverage provided under the insured's motor vehicle insurance policies, and such coverages shall apply to the insured's losses in addition to the amounts payable under any available bodily injury liability and property damage liability insurance coverages.  The insured's uninsured motorist coverage shall not be used to duplicate payments made under any available bodily injury liability insurance and property damage liability insurance coverages but instead shall be available as additional insurance coverage in excess of any available bodily injury liability insurance and property damage liability insurance coverages; provided, however, that the insured's combined recovery from the insured's uninsured motorist coverages and the available coverages under the bodily injury liability insurance and property damage liability insurance on such uninsured motor vehicle shall not exceed the sum of all economic and noneconomic losses sustained by the insured.  For purposes of this subdivision, available coverages under the bodily injury liability insurance and property damage liability insurance coverages on such motor vehicle shall be the limits of coverage less any amounts by which the maximum amounts payable under such limits of coverage have, by reason of payment of other claims or otherwise, been reduced below the limits of coverage;

     (II) Provided, however, that an insured may reject the coverage referenced in subdivision (I) of this division and select in writing coverage for the occurrence of sustaining losses from the owner or operator of an uninsured motor vehicle that considers such motor vehicle to be uninsured only for the amount of the difference between the available coverages under the bodily injury liability insurance and property damage liability insurance coverages on such motor vehicle and the limits of the uninsured motorist coverages provided under the insured's motor vehicle insurance policies; and, for purposes of this subdivision, available coverages under the bodily injury liability insurance and property damage liability insurance coverages on such

137, n. 2, 772 S.E.2d 651 (2015). Accordingly, we find no merit to Ms. Tucker's argument that there is a distinction between *uninsured* and *underinsured* motorists such that OCGA § 33-7-11 is not applicable in the present case. This assignment of error is without merit.

## DECREE

For the foregoing reasons, the trial court's judgment which granted GEICO's motion for a directed verdict against Ms. Tucker and dismissed this suit with prejudice is affirmed.

## AFFIRMED

---

motor vehicle shall be the limits of coverage less any amounts by which the maximum amounts payable under such limits of coverage have, by reason of payment of other claims or otherwise, been reduced below the limits of coverage; and …

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
JOHN J. MOLAISON, JR.
CORNELIUS E. REGAN, PRO TEM

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

SUSAN S. BUCHHOLZ
CHIEF DEPUTY CLERK

LINDA M. WISEMAN
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY **APRIL 26, 2023** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

**22-CA-431**

### E-NOTIFIED
24TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE DONALD A. ROWAN, JR. (DISTRICT JUDGE)
ERIC A. WRIGHT (APPELLANT)          STEPHEN D. CRONIN (APPELLEE)

### MAILED
ALEXANDRIA C WALKER (APPELLANT)          J. CHRISTOPHER DIPPEL, JR. (APPELLEE)
DARYL A. GRAY (APPELLANT)                ATTORNEY AT LAW
LOUIS H. THOMAS, III (APPELLANT)         501 LOUISIANA AVENUE
ATTORNEYS AT LAW                         BATON ROUGE, LA 70802
201 ST. CHARLES AVENUE
SUITE 2710
NEW ORLEANS, LA 70170